UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DARIN C. MOORE, JR., *et al.*,<br><br>Defendants. | Criminal Action No. 18-198 (JEB) |

**MEMORANDUM OPINION**

Defendants Darin Moore, Gabriel Brown, James Taylor, and John Sweeney are charged with, among other crimes, First-Degree Murder While Armed and Kidnapping Resulting in Death. All four are detained in D.C. Department of Corrections facilities while awaiting trial. At some point, the U.S. Attorney's Office submitted a request to DOC that Defendants be separated. DOC, consequently, appears to have transferred two Defendants (Taylor and Sweeney) to the Correctional Treatment Facility (CTF), while the other two (Moore and Brown) have remained at the D.C. Jail. Certain restrictions have been imposed within those facilities to keep the pairs of Defendants apart. Moore now moves to vacate the separation order, claiming that it unconstitutionally restricts his movements within the Jail. Disagreeing, the Court will deny the Motion.

**I.    Background**

The Government alleges that on June 19–20, 2018, Defendants kidnapped Andre Carlos Simmons, Jr., held him for ransom, and then killed him. See ECF No. 41 (Superseding Indictment) at 2–6. It thus arrested Moore on June 20, Brown on June 27, and Taylor on August 20. See ECF Nos. 1, 10, 21. Sweeney was not arrested until January 24, 2019, after a superseding indictment charged him with the same crimes. See ECF Nos. 30, 33. On March 7,

1

the prosecution brought another superseding indictment, this time charging Defendants with Kidnapping Resulting in Death — an offense that could have made them eligible for the death penalty — and First-Degree Murder.  See Superseding Indictment at 2–6.  The case has been largely on hold the past several months while the Department of Justice considered whether to seek the death penalty.  On June 13, 2019, this process wrapped up, and the Government informed the Court that it would not pursue the death penalty against any Defendant.  See ECF No. 58.

In the intervening months, however, a number of issues have arisen related to the circumstances of Defendants' detention.  As mentioned, all four have been held pending trial.  See ECF No. 5 (Moore Detention Mem.); Minute Entry of 8/3/2018; ECF No. 24 (Taylor Detention Mem.); Minute Entry of 1/24/2019.  The U.S. Attorney's Office acknowledges that, from the time of their arrests, it has asked DOC to keep them separated.  See ECF No. 54 (Opp. to Mot. to Vacate) at 2.  Defendants say that Moore, Taylor, and Brown were nevertheless housed together in general population at the D.C. Jail from August 2018 until January 2019.  See ECF No. 44 (Taylor Mot. to Vacate) at 2; ECF No. 52 (Moore Mot. to Vacate) at 1.  On January 17, 2019, DOC transferred Taylor to CTF.  When Sweeney was arrested one week later, he was also placed there.  See Moore Mot. at 1.  At subsequent status conferences, counsel for Taylor and Sweeney informed the Court that their clients had been placed in protective custody — effectively, solitary confinement — because CTF was not a maximum-security facility and could not otherwise detain them.  See Taylor Mot. at 2–4, 7.  Back at the D.C. Jail, Moore and Brown were housed on separate floors and kept apart.  See Moore Mot. at 3.

Faced with concerns about Taylor's and Sweeney's form of detention, the Court directed their counsel to work with the prosecution and DOC to see if these issues could be resolved

without judicial intervention. Finding no success on that front, Taylor thereafter filed a motion to vacate the separation order, as he believed that order had led him to be placed in protective custody while at CTF. See Taylor Mot. at 5–7. The Government did not oppose the Motion, which the Court granted. See ECF No. 51 (Order on Taylor Mot.). It is unclear how Taylor and Sweeney have been housed since the Court's order, but they presumably are no longer in isolation at CTF.

Moore has now filed a similar Motion. Unlike Taylor, however, he is not in protective custody. Instead, Moore complains that the separation order prevents him from moving around the Jail while Brown is moving, which inhibits his access to the law library and complicates his ability to meet with counsel. See Moore Mot. at 2. This time, the Government has filed an Opposition, arguing that the separation order is justified by both the prosecution's concerns about collusion among Defendants and the security of witnesses and that it imposes little burden on the conditions of Moore's pretrial detention. See Opp. at 2.

## II. Legal Principles

In his Motion, Moore posits that the separation order and concomitant restrictions on his movement at the Jail violate his due-process rights. See Moore Mot. at 3 (citing Bell v. Wolfish, 441 U.S. 520, 539 (1979)). "[W]here it is alleged that a pretrial detainee has been deprived of liberty without due process, the dispositive inquiry is whether the challenged condition, practice, or policy constitutes punishment." Block v. Rutherford, 468 U.S. 576, 583 (1984). The Court's task in applying this standard is to determine "whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Bell, 441 U.S. at 538. Government restrictions taken with an "expressed intent to punish" clearly constitute punishment. Id. So do actions that, while not taken with such intent, "are not

3

'rationally related to a legitimate nonpunitive government purpose' or . . . 'appear excessive in relation to that purpose.'" Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015) (quoting Bell, 441 U.S. at 561). A pretrial detainee thus can prevail if she either introduces evidence of a subjective intent to punish or demonstrates that a restriction is objectively unreasonable or excessive relative to the Government's proffered justification. Id. at 2473–74.

The due-process protections just discussed derive from the substantive branch of the Due Process Clause. See Block, 468 U.S. at 593–94 (Blackmun, J., concurring). Since pretrial detainees "retain at least those constitutional rights . . . enjoyed by convicted prisoners," Bell, 441 U.S. at 545, however, they maintain other constitutional protections as well. The procedural component of the Due Process Clause, for one, prevents the Government from taking actions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" absent certain procedural protections — *viz.*, "notice and an adequate opportunity to be heard." Wilkinson v. Austin, 545 U.S. 209, 218, 223 (2005) (citation omitted); see also Williamson v. Stirling, 912 F.3d 154, 181 & n.20 (4th Cir. 2018). In addition, the Eighth Amendment's prohibition on cruel and unusual punishment — while not applicable on its terms to pretrial detainees — establishes a separate constitutional floor. See City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983). The Government flouts this guarantee if it imposes conditions of confinement that create "a sufficiently substantial 'risk of serious damage to [the inmate's] future health'" and acts with "knowing disregard" of such risk. See Chandler v. D.C. Dep't of Corrections, 145 F.3d 1355 (D.C. Cir. 1998) (citation omitted). Since Moore does not invoke these other protections, no more needs to be said about them here.

4

**III.     Analysis**

Moore does argue that the separation order violates substantive due process, and that is because it is unsupported by any legitimate governmental objective and thus could only have been implemented for the purpose of punishment. See Moore Mot. at 3–4. In response, the Government asserts that separation is warranted in this case "to prevent the defendants from engaging in further collective action that might put people in danger, including coordinating efforts to obstruct justice such as through attempts to intimidate witnesses and falsely coordinate defenses." Opp. at 2. The Court's inquiry, discussed above, can be broken into two steps. The first addresses whether the restriction is supported by a "legitimate nonpunitive governmental purpose." Bell, 441 U.S. at 561. The Court believes that it is. In a multiple-defendant homicide case, the prosecution's concerns about improper collusion are neither irrational nor illegitimate. It is not clear that Moore disagrees. Rather than challenge the legitimacy writ large of such concerns, he contends that they lack evidentiary foundation in this case. See Moore Mot. at 3–4. But this argument goes to the next step of the analysis, at which the Court will consider whether the asserted governmental objective actually justifies the restriction being challenged.

Turning to that issue, the Court must decide whether the restriction is not "reasonably related" or is "excessive in relation" to that purpose. See Bell, 441 U.S. at 538–39. Moore argues that this is so because there is no evidentiary basis supporting the prosecution's only proffered justifications. This argument, while perhaps persuasive in the context of more substantial restrictions on confinement, does not carry the day here. When deciding whether a restriction is not reasonably related to — or is excessive relative to — the Government's justification, the Court must consider the <u>strength</u> of that justification in the context of the case and then <u>weigh</u> that consideration against the harshness of the restriction. See Block, 468 U.S. at

585–87.  In challenging the evidentiary foundation of the prosecution's concerns, Moore disputes the strength of the governmental interest at the first of these steps.  So far, he is on solid ground, as the Court shares some his qualms on this issue.  Up to this point, the prosecution has submitted very little information regarding potential risks of collusion or harm to witnesses.  The best it comes up with are equivocal allegations that friends or family members of certain Defendants — but not Moore — had a verbal altercation outside the courtroom that "may be connected" to a stabbing that took place later that day.  See Opp. at 2–3.  Further undercutting the seriousness of the Government's concerns is the fact that three Defendants were apparently housed together in general population at the Jail for more than four months.  See Moore Mot. at 1.

      Where Moore loses his footing, however, is at the subsequent weighing step.  He appears to suggest that the absence of much evidence supporting the Government's justification necessarily invalidates the restrictions on his movement, no matter how minor.  Id. at 3.  That is not the case.  The proper inquiry weighs the harshness of the restriction against the magnitude of the prosecution's concerns, even if such concerns are only weakly present.  See Block, 468 U.S. at 585–87.  Applying that standard here, the Court finds that the more general concerns attending cases like this one — *i.e.*, a four-co-defendant homicide — combined with the facts (though scant) the prosecution offers about possible violence to witnesses and unlawful collusion, are enough to support the minimal restrictions on Moore's confinement.  Indeed, as of now, the actual restrictions Moore alleges — *viz.*, the brief limits on his movement while Brown moves around the Jail — more closely resemble inconveniences than impingements on liberty.  See Bell, 441 U.S. at 538–39; see also id. at 539 n.21 ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.") (citation omitted).  The Court thus

finds that, at least where separation imposes little burden on a defendant's confinement, it is not excessive for the Government to request it under the circumstances presented here.

The principal decision Moore relies on in his Motion aptly illustrates why the circumstances here fall short of a violation of his substantive-due-process rights. In United States v. Basciano, 369 F. Supp. 2d 344 (E.D.N.Y. 2005), the court concluded that the prosecution's concern about the defendant's planning crimes from prison was legitimate, but that "the government's chosen means — [] indefinite and solitary confinement" were not "reasonably related" to that goal in the absence of further evidence that such planning would occur. Id. at 351. Put another way, it felt that the imposition of solitary confinement was excessive relative to the Government's legitimate concerns, given the lack of evidence substantiating them. Id. The court grounded its decision in the "exceptionally harsh" nature of such confinement, which it understandably felt "must be reserved for the most extreme cases." Id.

The conditions here, conversely, fall at the other end of the spectrum. As mentioned, Moore is held in general population. His complaints boil down to the inconvenience of having "to hold his location until the other party is finished moving." Moore Mot. at 2. While he mentions the possibility that such restrictions could inhibit his "ability to access the law library" and his "ability to consult with counsel," id., he does not allege facts suggesting that they have meaningfully interfered with either. The weighing of considerations thus comes out differently from Basciano. Where the restriction imposed is harsher, the Government may be required — as in that case — to "show some intent on behalf of Mr. Moore and his co-defendants to engage" in unlawful collusion or at least offer evidence that such collusion is reasonably probable. Id. at 3. But Moore is incorrect to insist on such evidence to justify the minimal restrictions imposed on him at this point.

In sum, under the circumstances presented, the Court finds that the separation order and associated restrictions on Moore's movement are reasonably related to and not otherwise excessive relative to the Government's concerns. Moore has thus failed to make out a substantive-due-process violation.

## IV. Conclusion

For the foregoing reasons, the Court will deny Moore's Motion to Vacate the Separation Order. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 21, 2019