UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DARIN CARLYLE MOORE, JR., *et al.*,<br><br>Defendants. | Criminal Action No. 18-198 (JEB) |

**MEMORANDUM OPINION**

Defendants Darin Carlyle Moore, Jr., Gabriel Brown, John Sweeney, and James Taylor are charged with a number of crimes in connection with the abduction and murder of a Maryland man as part of a conspiracy to hold him for ransom. The Government has filed a series of pretrial Motions *in Limine* in preparation for trial, which was recently continued from March until September 2022 at Defendants' request. The Court now takes up one, which seeks to limit cross-examination of certain employees at the D.C. Department of Forensic Sciences. In recent years, certain units of DFS have been plagued by alleged misconduct in analysis and testing, which has been the subject of several investigations. The Government contends that cross-examination of the DFS witnesses — who merely collected, rather than tested, evidence — about such misconduct should be limited in certain regards, while Defendants maintain that a more far-reaching inquiry is warranted. Finding that the Government has generally made reasonable concessions and that any potential probative value of broader questioning is substantially outweighed by the danger of unfair prejudice, confusing the issues, and wasting time, the Court will grant the Government's Motion as to all but one issue pertaining to one witness.

1

I.  **Background**

The Court has set forth the allegations against Defendants in several prior Opinions in this case and thus will not recount that history at length. See, e.g., ECF Nos. 62, 173, 189, 221. For present purposes, it suffices to briefly summarize the facts as alleged in the grand jury's 2019 five-count Superseding Indictment, which the Court accepts as true for purposes of this Opinion. See United States v. Ballestas, 795 F.3d 138, 149 (D.C. Cir. 2015). On June 19, 2018, the four Defendants kidnapped Andre Carlos Simmons, Jr., in Maryland and held him for ransom. See ECF No. 41 (Superseding Indictment) at 2–4. After collecting the ransom, they nonetheless took Simmons to an alley in the District, where they repeatedly shot him to death. Id. at 4–6.

From these facts, Defendants are charged with Kidnapping (18 U.S.C. § 1201(a)(1)); Conspiracy to Commit Kidnapping (18 U.S.C. § 1201(c)); Using, Carrying, Possessing, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence (18 U.S.C. § 924(c)(1)(A)(ii), (iii)); and two counts of First-Degree Murder While Armed (Premeditated and Felony Murder) (D.C. Code §§ 22-2101, 22-4502, 22-2104.01(b)(1) and 22-1805). Id. at 2–6.

At issue here is the permissible scope of questioning of certain current and former DFS employees, whom the Government anticipates calling as witnesses. See ECF No. 219-2 (Motion *in Limine*) at 1. The DFS witnesses are: Crime Scene Scientists (CSS) Danielle Yandura, M. Roberts, E. Cheaver, Kristin Stone, Andrea Feldman, Shane Everitt, Rosemarie Schuster, Ninotchka Sylvester, and ████████, as well as two employees in the Latent Fingerprint Unit. Id. at 1–2. The DFS witnesses conducted various evidence-collection tasks connected to this case, including taking photographs, swabbing items for DNA, processing items for

fingerprints, and recovering pieces of evidence. Id. at 2. All or substantially all of that work was conducted in 2018, around the time of the alleged crimes and subsequent investigation. Id. Notably, however, "the duties performed by each of the DFS employees in this case consisted of largely routine tasks involving the collection and processing of items of evidence," id. at 3 — a proposition that Defendants do not seriously challenge. See ECF Nos. 227 (Sweeney Opposition); 236 (Brown Opposition). In other words, the Government did not ask these witnesses to conduct any forensic testing nor will it ask them to testify about the results of such testing, which was performed at other labs.

In its Motion *in Limine*, the Government seeks to limit questioning of the DFS employees about allegations of misconduct involving analysis and testing at the agency. While the Court need not belabor those allegations here, they bear some relevance to resolving this Motion. In 2019, the United States became aware of potential misconduct involving personnel in the Firearms Examination Unit (FEU) of DFS. See Motion *in Limine* at 5; Attachment A to Motion *in Limine* (Omnibus DFS Letter) at 2–3. After the D.C. Office of the Inspector General and multiple components of the federal government conducted a formal investigation, the United States became aware of additional allegations regarding the FEU and several other analytical units of DFS. See Motion *in Limine* at 5–8; see also ECF No. 244 (Reply) at 3; Omnibus DFS Letter at 2–3, 20. Additionally, in late 2020, the D.C. OIG opened a criminal investigation of DFS, which remains ongoing. See Motion *in Limine* at 6; Omnibus DFS Letter at 18–21. As a result of one of the investigations of the FEU, the American National Standards Institute's National Accreditation Board advised DFS that it was "immediately suspending the laboratory's accreditation and initiating the process for withdrawal of accreditation." Omnibus DFS Letter at 17. To be clear, however, none of the DFS witnesses the Government intends to call are

3

themselves the subject of the above allegations of misconduct, and only CSS ▇ is alleged to have been involved in any misconduct at all. See Motion *in Limine* at 3–4; Reply at 3.

Separate from the allegations involving the FEU, DFS also conducted an internal investigation relating to 10 members of the CSS Division. See Omnibus DFS Letter at 23–24. That internal investigation revealed that a number of employees in the Division had purposefully recorded the wrong distribution dates on their crime-scene reports, and it recommended terminating seven such employees as a result. Id.; see Motion *in Limine* at 8–9. One of those seven was CSS ▇, an anticipated witness who had recovered evidence on June 22, 2018, from a car involved in this case. See Motion *in Limine* at 2, 8–9. More specifically, DFS's internal investigation revealed that in 2017, CSS changed its policy to require employees to distribute their own crime-scene reports within 14 days of beginning a case, as opposed to having an administrative assistant distribute the reports. See Attachment E to Motion *in Limine* (Investigation Report on Distribution Date Changes) at 3; Attachment H to Motion *in Limine* (Memorandum on Report Distribution) at 1–2; Motion *in Limine* at 9–10. Notwithstanding that new policy, ▇ admitted to regularly entering different dates on her reports from the actual dates on which she uploaded and distributed them. See Attachment B to Motion *in Limine* (Interview of ▇, June 21, 2021); Attachment C to Motion *in Limine* (Interview of ▇, June 28, 2021); Investigation Report on Distribution Date Changes at 2, 5–6. After being notified that her termination had been recommended, ▇ resigned in September 2021. See Motion *in Limine* at 9 & n.5.

**II.      Legal Standard**

Federal Rule of Evidence 401 states that evidence is relevant if (a) "it has any tendency to make a fact more or less probable than it would be without the evidence," and (b) "the fact is of

4

consequence in determining the action." Relevant evidence is admissible under Rule 402 unless a different rule "provides otherwise." Rule 403, in turn, provides one such exception, permitting a court to exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Even if it is concededly relevant, unduly prejudicial evidence may be excluded to prevent jurors from," among other things, "impermissibly relying on biases, dislikes, or the emotional impact of the evidence." United States v. Straker, 800 F.3d 570, 589 (D.C. Cir. 2015). The Confrontation Clause of the Sixth Amendment, which Defendants allude to in their Oppositions, "provides a criminal defendant with the right 'to be confronted with the witnesses against him,' including the right to cross-examine those witnesses." Id. at 595 (quoting U.S. Const. Amend. VI).

"The District Court enjoys broad discretion to control cross-examination." United States v. Hite, 769 F.3d 1154, 1171 (D.C. Cir. 2014) (citations omitted). "It may disallow cross-examination that is repetitive, irrelevant, unduly prejudicial, collateral to the issues in the trial, or outside the scope of direct examination." Id.

**III. Analysis**

The Court first addresses the Government's proposed restrictions on cross-examination of the DFS witnesses other than ▮▮▮▮ before turning to the unique issues she poses.

A. Non-▮▮▮▮ Witnesses

While the Government seeks to limit the permissible scope of cross-examination of the DFS witnesses, it concedes that some questioning is appropriate. Specifically, the Government maintains that "the only legitimate avenue of cross-examination with respect to the above-listed DFS employees under federal law is cross-examination regarding testimonial bias." Motion *in*

*Limine* at 12. The flipside of that, the Government contends, is that questioning about potential institutional corruption and about the broader allegations against and investigations of DFS should not be allowed. The Court addresses those two lines of potential questioning in turn.

First, it is undisputed that Defendants may cross-examine the witnesses about their personal knowledge of the ongoing D.C. OIG investigation of DFS and its potential impact on their testimony. It is common sense that, when a witness is involved in an ongoing investigation, "the fact that [the witness] was being investigated at all" can be the source of a "potential motive" for testifying in a biased manner so as to "curry favor" with the investigators. See United States v. Wilson, 605 F.3d 985, 1006 (D.C. Cir. 2010). Bias, furthermore, is almost always a permissible area of cross-examination. Here, the Government concedes that it is appropriate to question the DFS witnesses about "whether the witness would be motivated to testify falsely against the defendants in order to curry favor with the government, in light of the pending OIG investigation." Motion *in Limine* at 13. The Court agrees that questions tailored to assess such bias are permissible.

To assist the parties at trial, the Court provides some guidelines about the types of questioning that fit this bill. It is guided by a December 2021 ruling from Judge Royce Lamberth of this district in United States v. Calloway involving the same issue. There, Judge Lamberth limited cross-examination of certain DFS witnesses to the following areas: (1) the witness's knowledge of the ongoing investigation; (2) whether the witness believes that she is a subject of the investigation; and (3) the potential penalty the witness believes she could face as a result of such investigation, either criminally or related to employment. See Calloway, No. 20-53, ECF Nos. 78 (Gov. Motion *in Limine*) at 10–11; 89 (Transcript of Motions Hearing) at 55–57. This Court concurs that such lines of inquiry are appropriate and believes that they will allow the jury

6

to assess the witnesses' personal knowledge of the ongoing investigation and its potential effect on their testimony.

That leads the Court to the second main issue concerning the non-▮ DFS witnesses: may Defendants question them more broadly about the allegations of misconduct at the agency? The answer is no, with one caveat. In Calloway, Judge Lamberth also permitted — and the Government does not oppose here — questions regarding whether the witness was aware that DFS had lost its scientific accreditation as to certain scientific units within the agency. See Reply at 5, 7 (citations omitted). This general question is permissible here.

Beyond that, although his Opposition is not a model of clarity, Sweeney appears to contend that the Court should not impose any pretrial limits on misconduct questioning on the ground that he "has a right to present the full extent of the laboratory at which these DFS employees worked." Sweeney Opp. at 7. As the Government persuasively explains, however, such evidence is likely not relevant to this case, and even if it were, any probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, and wasting the jury's time.

First, it is far from clear that evidence relating to the alleged misconduct at DFS is at all probative given the facts of this case. Recall that activity at the agency is far afield from the actual work conducted by the witnesses here. Significantly, the alleged misconduct primarily involved issues with firearms and ballistics analysis in the FEU and other issues related to scientific analyses, while none of the witnesses here is in the FEU, and their role in this case largely involved routine evidence collection, as opposed to actual testing. See DFS Omnibus Letter at 17–18; Motion in Limine at 2–3; Reply at 3. In light of that reality, it is not at all apparent that the witnesses have any personal knowledge of the alleged misconduct, much less

that any such knowledge would be relevant to evaluating the veracity of their testimony here. In that regard, this case shares some similarities with United States v. Zanders, in which Judge Rudolph Contreras excluded testimony relating to misconduct in another forensic lab, explaining, "[D]espite the clear misconduct by certain forensic chemists at [another lab], Ms. Zanders has simply not established a connection between that misconduct and the test results that is significant enough to call into question the reliability of the Government's evidence." No. 16-197, ECF No. 103 at 10.

Even if Defendants' proposed questioning could lead to relevant testimony, any probative value is substantially outweighed by the danger of unfair prejudice, confusing the jury, and wasting time. See Fed. R. Evid. 403. As Judge Trevor McFadden recently explained in granting a similar Motion *in Limine* limiting cross-examination of DFS witnesses, it would be "unduly prejudicial" to permit cross-examination about the misconduct of other employees and units at DFS when there was no reason to think that the witnesses had any connection to the misconduct. See United States v. Fields, No. 20-161, ECF No. 50 at 9–10 (citing United States v. Kelsey, 917 F.3d 740, 749 (D.C. Cir. 2019)). There, he reasoned that "it's not enough to say that corruption and mismanagement are endemic at the DFS labs. Rather, we need to be talking about specific allegations tying specific employees to some sort of impropriety." Id. at 9. That conclusion is in keeping with the First Circuit's conclusion that a district court did not err by prohibiting cross-examination of a police officer about corruption involving other officers on the grounds that the defendant "cannot benefit from somebody else's corruption, and it is immaterial to this case." United States v. Gonzalez-Vazquez, 219 F.3d 37, 44 (1st Cir. 2000) (internal quotation marks omitted); see also Kelsey, 917 F.3d at 749 ("The district court did not abuse its discretion in preventing Kelsey from cross-examining [the witness] on the Department of Forensic Sciences'

8

mixture-analysis problems" because "any such problems were irrelevant to how the jury might weigh and credit [that witness's] testimony.").

The same result obtains here. Even if the DFS witnesses had first-hand knowledge of the alleged misconduct and could provide probative testimony on the topic, there is a substantial likelihood that questioning on the topic would lead to a mini-trial on the far-ranging allegations against and investigations of DFS. While those allegations are no doubt serious (and even assuming that they are true), such a trial within a trial is quite likely to confuse the jury about how the allegations and subsequent investigations relate to the limited role of the DFS witnesses in this case and to take up significant time in what will already be a lengthy and involved trial. Free-ranging cross-examination on the topic could, moreover, create a risk that the jury "base[s] its decision on something other than the established propositions in the case." Zanders, ECF No. 103 at 10 (internal quotation marks and citation omitted).

Defendants resist this conclusion and maintain that the Court should, at the very least, decline to follow the cases previously cited and instead rely on United States v. Joseph Smith, No. 19-324. In that case, Chief Judge Beryl Howell imposed many of the same restrictions on cross-examination of DFS witnesses as in Fields and explained that "[t]here are a number of aspects of Judge McFadden's ruling [in Fields] with which I agree." Attachment P to Motion *in Limine* (United States v. Joseph Smith, Transcript of Pretrial Conference) at 16. She went on to clarify, however, that the defense could also ask the DFS witnesses about "poor oversight and supervision" as long as they did not focus on "allegations of misconduct that would be imputed to the forensic scientists." Id. at 16–17.

The Court declines to permit such questioning here for several reasons. First, its probative value appears minimal at best, as it is not clear that the DFS witnesses would have

9

much insight about how misconduct in other parts of the agency affected the quality of oversight and supervision of their work. Second, and more importantly, allowing such questioning would invite time-consuming and potentially confusing testimony about how misconduct elsewhere in DFS could have affected managers' capacity to supervise, while providing limited insight into this case. At worst, permitting this line of inquiry could allow Defendants to smuggle in the allegations of misconduct at DFS, which may prove highly prejudicial. See Fields, ECF No. 50 at 9 (excluding similar testimony because "there are no allegations against the individuals who are going to testify and . . . we basically have a situation where defense is looking to smear those employees based on kind of guilt by association based on alleged impropriety from their colleagues [or] from their supervisors").

In sum, the Court concludes that any probative value of plumbing the depths of the alleged misconduct at DFS is substantially outweighed by a high risk of unfair prejudice, confusing the issues, and wasting time. Such cross-examination is thus precluded by Rule 403. Defendants are not entirely out of luck, however, as they will be able to question the witnesses about their knowledge of the ongoing investigation of DFS, its potential effect on their testimony, and their knowledge of the agency's loss of accreditation.

B. ▮

A closer call concerns the testimony of CSS ▮, the former DFS employee who resigned after she admitted to changing the distribution dates on crime-scene reports. Once again, the Government reasonably concedes that some questioning on the disputed topic is warranted. Indeed, it states that "cross-examination of ▮ regarding her alleged misconduct of incorrectly reporting the distribution dates on her reports is appropriate." Motion *in Limine* at

10

21. Defendants will thus be permitted to question her about that alleged misconduct in front of the jury.

In the Government's view, however, that is the full extent of permissible questioning of ▓▓▓▓. It "disagrees with the assessment by DFS investigators that ▓▓▓▓'s conduct involved her making 'false' statements that undermine her 'veracity,'" and it submits that "cross-examination of ▓▓▓▓ should be limited to eliciting that she recorded the wrong distribution dates on some of her reports in violation of DFS standard operating procedures." Id. at 21–22. Here, the Court disagrees.

It would be improper for the Court to circumscribe her testimony and to preclude the jury from knowing and evaluating for itself the circumstances surrounding her alleged misconduct. In other words, ▓▓▓▓ will have the opportunity to explain the circumstances surrounding her changing the distribution dates. In doing so, she may well convince the jury that she misunderstood her instructions and was merely negligent, or that the errors had no effect on her work relating to this case. On the other hand, the jury may disagree as to her characterization and find that her conduct does implicate her veracity.

To be clear, the above conclusion does not permit a fishing expedition by Defendants. Just as they may not use the cross-examination of the other DFS witnesses to conduct a trial within a trial about the wide-ranging allegations of misconduct involving other components of the agency, they may not circumvent that order by asking similar questions of ▓▓▓▓. In other words, the same general limits outlined with respect to the other DFS witnesses about the broader allegations of misconduct obtain as to ▓▓▓▓, with the exception that Defendants may ask her about her own alleged misconduct involving changing the distribution dates on her

11

reports.  Depending on what is elicited, Defendants may also be able to argue that her lack of veracity undermines her entire testimony.

\*     \*     \*

Before concluding, the Court addresses one further issue raised by Defendants.  They contend that "it is premature to limit cross-examination *in limine* before the Government has produced all discovery on the very topic."  Brown Opp. at 4; see Sweeney Opp. at 6.  The Court is certainly willing to revisit this issue as trial approaches if there is a material change in circumstances that necessitates doing so, but wishes to provide its ruling as matters now stand.  While there may be further disclosures before trial commences, Defendants do not dispute that they have already been provided substantial discovery on the topic.  See Omnibus DFS Letter; Brown Opp. at 2; Sweeney Opp. at 6.  The parties have already fully briefed the issue based on that discovery in anticipation of a March trial that was recently continued.  It would thus be a poor use of the parties' and the Court's time and resources to require new briefing on the subject later in 2022, when there may well be little new information on the issue.  In the event that there is material new information before trial commences, the Court may revisit its decision, provided that Defendants give it a compelling reason for doing so.  See Fields, ECF No. 50 at 13 ("None of this is meant to bar the defense from re-raising specific questions that they believe they're entitled to ask based on how the testimony comes out at trial.").

**IV.     Conclusion**

For the foregoing reasons, the Court will grant the Government's Motion *in Limine* in part and deny it in part. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: March 9, 2022