**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | **Criminal Action No. 18-198 (JEB)** |
| **DARIN CARLYLE MOORE, JR.**, *et al.*, | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

Defendants Darin Carlyle Moore, Jr., Gabriel Brown, John Sweeney, and James Taylor are under indictment for the abduction and murder of Andre Simmons, Jr.  Among its pretrial Motions *in Limine*, the Government has requested that the Court exclude as unduly speculative any evidence related to a third-party-perpetrator defense.  Defendants counter that such evidence should be admitted, maintaining that they have established a sufficient connection to the crime alleged.  Although the Court will permit Defendants to raise the issue again should new information come to light, the probative value of the evidence proffered thus far fails to predominate over its risk of prejudice.  The Court will therefore grant the Government's Motion.

## I.    Background

A brief summary of the allegations against Defendants reveals the following: according to the five-count Superseding Indictment, which the Court accepts as true for purposes of this Opinion, see <u>United States v. Ballestas</u>, 795 F.3d 138, 149 (D.C. Cir. 2015), Defendants kidnapped Simmons on June 19, 2018.  <u>See</u> ECF No. 41 (Superseding Indictment) at 3.  After abducting him in Maryland, holding him for ransom, and collecting the sum demanded, they took Simmons to the District, where they shot and killed him.  <u>Id.</u> at 3–5.  From these facts, they

1

are charged with Kidnapping (18 U.S.C. § 1201(a)(1)); Conspiracy to Commit Kidnapping (18 U.S.C. § 1201(c)); Using, Carrying, Possessing, Brandishing, and Discharging a Firearm During and in Relation to a Crime of Violence (18 U.S.C. § 924(c)(1)(A)(ii), (iii)); and two counts of First-Degree Murder While Armed (Premeditated and Felony Murder) (D.C. Code §§ 22-2101, 22-4502, 22-2104.01(b)(1) and 22-1805). Id. at 2–6.

The present evidentiary dispute began in October 2019, when the Government filed a motion to preclude Defendants from raising a third-party-perpetrator defense at trial. See ECF No. 68 (Motion to Preclude Third-Party Defense). Defendants Moore and Taylor each filed oppositions. See ECF Nos. 93 (Moore Opp.), 104 (Taylor Opp.). After the Court denied that motion without prejudice, see Minute Order of Feb. 19, 2020, the Government renewed its Motion in December 2021, asking that the Court exclude any evidence of, reference to, or cross-examination related to a third-party-perpetrator defense. See ECF No. 222 (Renewed Motion). When no opposition was timely filed, the Court granted the Motion as conceded. See Minute Order of Feb. 9, 2022. Brown then requested that the Court reconsider that decision and look at the merits. See ECF No. 238 (Motion for Recon.). Given some confusion regarding scheduling, the Court agrees that the Defendants are entitled to a substantive Opinion.

## II.     Legal Standard

Although state and federal rulemakers have the prerogative to fashion standards for the inclusion of evidence at trial, the Constitution guarantees to criminal defendants the right to a "meaningful opportunity to present a complete defense." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). This limits courts' ability to impose "arbitrary" rules of evidence, including those that exclude "important defense evidence" without serving "any legitimate interests," or are otherwise "disproportionate to the

purposes they are designed to serve." <u>Id.</u> at 324–25 (internal quotation marks and citation omitted).  At the same time, it falls within a court's discretion to exclude evidence whose probative value is outweighed by other negative factors, such as its potential to confuse or mislead the jury.  <u>Id.</u> at 326; <u>see also id.</u> at 330 (noting that evidentiary rules seek to "focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues").

The constitutional right to present a complete defense undergirds a defendant's right to present evidence that a third party committed the crime of which he is accused.  <u>See</u> <u>United States v. Benbow</u>, 709 Fed. App'x 25, 27 (D.C. Cir. 2018); <u>see also</u> <u>Boykin v. United States</u>, 738 A.2d 768, 773 (D.C. 1999) ("The Sixth Amendment guarantees to criminal defendants not only the right to confront and cross-examine witnesses against them, but also the right to present evidence that someone else committed the offense for which [they are] on trial.") (internal quotation marks omitted).  As the Supreme Court has recognized, "Rules regulating the admission of [third-party-perpetrator] evidence" are "widely accepted."  <u>Holmes</u>, 547 U.S. at 327.  Thus, although defendants "may introduce [at trial] any legal evidence tending to prove" the existence of a third-party perpetrator, consistent with a court's general license to assess the probative value of evidence proffered, the admissibility of such evidence is bounded by the requirement that it "tend to prove or disprove a material fact" and that it not be too "speculative or remote."  <u>Id.</u> (quoting Am. Juris. 2d § 286 (1999)).  As discussed in more detail below, the requirements imposed on evidence of third-party guilt thus generally track the standards for admissibility outlined in Federal Rules of Evidence 401 and 403.

III.    **Analysis**

Defendants seek to present evidence connecting two different third parties, J.S. and V.B., to the kidnapping and murder of Simmons.  See Moore Opp.; Taylor Opp.; Motion for Recon. The Government asks that any such evidence be excluded and that the Court preclude Defendants from making any reference to a third-party perpetrator at trial.  See Renewed Motion at 1; ECF No. 242 (Government Opp.).  Defendants counter that the third-party evidence proffered presents a sufficient nexus to the crimes charged and thus warrants admission.  See Moore Opp. at 3; Taylor Opp. at 2; Motion for Recon. at 2.  Brown further argues that an adverse ruling would be premature as the Government has not yet produced all its discovery, nor has the defense concluded its own investigation.  See Motion for Recon. at 6.

Start with J.S.  Defendants point to "several witnesses" who have spoken of a "history of bad blood" between him and the decedent, including conflict over a woman they had both previously dated.  See Moore Opp. at 1 (quoting Motion to Preclude Third-Party Defense at 2); Taylor Opp. at 1 (quoting Motion to Preclude Third-Party Defense at 2).  The same witnesses indicated that J.S. had previously robbed Simmons.  See Moore Opp. at 1; Taylor Opp. at 1; ECF No. 238-2 (Discovery Letter) at 2.  In further support, Defendants highlight an anonymous tip submitted to the Prince George's County Crime Solvers website several days after Simmons's murder alleging that J.S. had been extorting Simmons, who had stopped making payments to him when J.S. was arrested and incarcerated on an unrelated charge.  See Moore Opp. at 2; Taylor Opp. at 1; ECF No. 93-1 (Exhibit 1) at 2.  Although J.S. was in custody when the events at issue in this case took place, see ECF No. 108 (Government Reply) at 1–2; Motion for Recon. at 3 n.3, Defendants suggest that he may have directed others to kidnap Simmons and point specifically to the tipster's claim that J.S. "sent his crew of henchmen after Andre" and that they "kidnapped

him at his home in Bowie, M[aryland]."  Exhibit 1 at 3; <u>see</u> Moore Opp. at 2–3; Taylor Opp. at

2; <u>see also</u> Motion for Recon. at 3 n.3.

Brown also asks the Court to admit evidence that the firearm used to kill Simmons was

recovered from a third party, V.B.  <u>See</u> Motion for Recon. at 4.  This occurred nine months after

the murder.  While the Government does not contest that evidence of the recovery of the gun is

admissible — <i>e.g.</i>, to contest Defendants' guilt by showing that the murder weapon was not

recovered from them — it maintains that Defendants cannot go a step further and argue to the

jury that V.B. committed the murder.  <u>See</u> Renewed Motion at 2–3.

A.    <u>Test for Admission</u>

The admissibility of this evidence must be determined by recourse to the general

standards enumerated in Rules 401 and 403.  <u>See</u> <u>United States v. McVeigh</u>, 153 F.3d 1166,

1190–91 (10th Cir. 1998); <u>see also</u> <u>United States v. Lighty</u>, 616 F.3d 321, 358 (4th Cir. 2010)

(explaining that rules governing third-party-perpetrator evidence "balance . . . the admission of

relevant evidence probative of defendant's guilt or innocence under Rule 401 with the exclusion

of prejudicial . . . evidence under Rule 403").  Like all other evidence, evidence of third-party

guilt must be relevant in order to be admissible.  Under Rule 401's "liberal" relevance standard,

however, this merely requires that it have a "tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be

without the evidence."  <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 587 (1993).

The degree of probative value required for evidence to be admissible under Rule 401 is "very

low."  <u>McVeigh</u>, 153 F.3d at 1190.  The evidence proffered in connection with J.S. and V.B. is

thus plainly relevant: it bears directly on facts of consequence to this case and has some tendency

to make such facts more or less probable than they would be otherwise.  Evidence that is relevant

for the purpose of Rule 401 may nevertheless not be "sufficient[ly]" relevant for the purpose of Rule 403.  Id. at 1188.

This is the rub here.  The critical issue for a court assessing the admissibility of third-party perpetrator evidence is thus a familiar one.  Consistent with the demands of Rule 403, a court should balance the "probative value" of such evidence against its "potential adverse effects."  Holmes, 547 U.S. at 329; see also id. at 326–27 (noting that rules regulating admissibility of third-party-perpetrator evidence are "a specific application" of principle exemplified by Rule 403).  Evidence that is otherwise relevant and admissible may be excluded under Rule 403 if its probative value is outweighed by its potential to confuse the issues, mislead the jury, or generate unfair prejudice.  See Fed. R. Evid. 403; McVeigh, 153 F.3d at 1190–91; see also Winfield v. United States, 676 A.2d 1, 3 (D.C. 1996) (en banc) (holding that court considering admissibility of third-party-perpetrator evidence may "properly take account" of danger of "distracting the jury").

The admissibility of third-party-perpetrator evidence turns not on the likelihood of the "third party's guilt or innocence, but [rather] on 'the effect the evidence has upon the defendant's culpability.'"  Winfield, 676 A.2d at 4 (quoting Johnson v. United States, 552 A.2d 513, 517 (D.C. 1989)).  Since the third party is not on trial, the evidence proffered need not "prove or even raise a strong probability that a person other than the defendant committed the offense" so long as it "tend[s] to create a reasonable doubt" as to the defendant's guilt.  Id. (quoting Johnson, 552 A.2d at 517); see also United States v. Cabrerra, No. 95-3052, 1996 WL 135718, at *2 (D.C. Cir. Feb. 15, 1996) (noting that admission of third-party-perpetrator evidence depends in part on "whether the third party's guilt would establish the defendant's innocence").  Evidence of third-party guilt may not be excluded merely because the prosecution's evidence is robust.  Holmes,

547 U.S. at 329; see also United States v. Jordan, 485 F.3d 1214, 1222 (10th Cir. 2007) (urging

courts to be "wary of per se rules" that would tend to exclude defense evidence on basis of

strength of prosecution's case).

      Courts weighing the probative value of third-party evidence generally require that it

evince a clear connection between the alleged third-party perpetrator and the crime charged.  A

defendant must proffer evidence that is "sufficient, on its own or in combination with other

evidence in the record, to show a nexus between the crime charged and the asserted [third

party]."  McVeigh, 153 F.3d at 1191; see also Cabrerra, 1996 WL 135718, at *2 (noting that

courts assessing evidence of third-party guilt consider "the strength of the nexus between the

third party and the crime"); Miller v. Brunsman, 599 F.3d 517, 526 (6th Cir. 2010) (finding

lawful exclusion of third-party-perpetrator evidence on basis that defendant "failed to show a

sufficient nexus" between third party and crime); Boykin, 738 A.2d at 774 (holding that

"defendant must proffer some evidence, either circumstantial or direct, of 'a third party's actions,

motives, opportunity, [or] statements'" tending to "'establish the necessary link, connection or

nexus between the proffered evidence and the crime at issue'") (quoting Johnson, 552 A.2d at

516).  The defendant may rely on a single fact or circumstance to meet her evidentiary burden or

on the aggregate effect of multiple facts or circumstances.  Boykin, 738 A.2d at 774.

      Although courts have not resolved the precise degree of connection required between the

third party and the crime alleged, the extent of probative value of such evidence is directly tied to

the "strength of the link between the exculpatory evidence and the case at hand."  Armstrong v.

Hobbs, 698 F.3d 1063, 1066 (8th Cir. 2012); United States v. Hendricks, 921 F.3d 320, 331 (2d

Cir. 2019) (holding that defendant has right to admit evidence of third-party guilt "so long as the

evidence 'sufficiently connect[s] the other person to the crime'") (quoting United States v.

7

White, 692 F.3d 235, 246 (2d Cir. 2012)); Benbow, 709 Fed. App'x at 27 (finding reasonable the exclusion of third-party evidence where defendant's proffer "failed to yield sufficient evidence of a reasonable possibility" of third party's guilt). Evidence that does not "place[] [the third party] anywhere near the . . . scene [of the crime] or suggest[] that he was otherwise involved" may thus properly be excluded. Hendricks, 921 F.3d at 331; see also Winfield, 676 A.2d at 5 (adopting rule that excludes third-party-perpetrator evidence that is "too remote in time and place, completely unrelated or irrelevant to the offense charged, or too speculative with respect to the third party's guilt").

Following Rule 403, the probative value is then weighed against the potential adverse effects of admitting the third-party evidence. See McVeigh, 153 F.3d at 1191. Although its potential for prejudice may vary from case to case, evidence of third-party guilt frequently poses an acute risk of "sidetrack[ing] the jury into consideration of factual disputes only tangentially related" to the case, as well as confusing the jury and thereby "invit[ing it] to render its findings based on emotion or prejudice." Id.; see also Wade v. Mantello, 333 F.3d 51, 61 (2d Cir. 2003) (describing "serious concerns" raised by "[t]he potential for speculation into theories of third-party culpability to open the door to tangential testimony"); Jordan, 485 F.3d at 1218–19 (making similar observations); Hendricks, 921 F.3d at 331 (same). Nevertheless, in some instances, where the proposed evidence is not "complex or time-consuming" or likely to "provoke the jury's emotions," the danger of unfair prejudice will be less substantial. Jordan, 485 F.3d at 1221 (explaining that permitting testimony of another witness at scene of crime would be "no more confusing" than that of other witnesses and distinguishing this from testimony at issue in McVeigh in which third party's "racist views" might have provoked jury). As such, despite the "special problems presented by 'alternative perpetrator' evidence,"

McVeigh, 153 F.3d at 1191 (citations omitted), the balancing required in such cases is based on a "totality of the circumstances" and is thus "strongly rooted in the facts of each individual case." Hilton v. United States, 250 A.3d 1061, 1072 (D.C. 2021) (quoting Bruce v. United States, 820 A.2d 540, 544–45 (D.C. 2003)); see also Cabrerra, 1996 WL 135718, at *2 (finding "admission of evidence inculpating a third party" to be "highly fact-dependent").

B.    Application

Employing this standard, the Court concludes that the evidence proffered with respect to J.S. and V.B., though relevant, fails to establish a sufficient nexus to the crimes alleged. Beginning again with J.S., and assuming the evidence proffered would be admissible and not hearsay, the information clearly suggests that J.S. had a motive to commit the crimes.  A "mere showing that another person possessed a motive," however, is insufficient without more to establish the required nexus to the crime.  Winfield, 676 A.2d at 5.  In order to establish "some reasonable possibility" that J.S. was the perpetrator, Defendants must proffer some evidence that he had not only a motive, but also a "practical opportunity to commit the crime" in question.  Id. at 4–5; Johnson v. United States, 136 A.3d 74, 80 (D.C. 2016); see also Resper v. United States, 793 A.2d 450, 460 (D.C. 2002) (finding inadmissible evidence of third party's "ill will" toward victim when supported only by "vague[]" reference to his presence in area of crime).  Although courts do not require that a defendant provide evidence "placing the third party at or near the crime scene," Johnson, 136 A.3d at 80, a defendant must at a minimum establish that the victim was "easily accessible" to the alleged perpetrator.  Id. at 82; Winfield, 676 A.2d at 6.  Since J.S. was incarcerated at the time of the killing, he obviously could not have been personally involved.

Defendants may nonetheless establish a sufficient connection with the crime through evidence of an "agent or accomplice."  Johnson, 136 A.3d at 80 n.15 (noting that evidence of

third-party motive may be admissible even when third party could not himself have committed

crime if he had an "agent or accomplice" with "the necessary access and knowledge").  The

anonymous allegation that J.S. "sent his crew of henchmen after [the victim]," Exhibit 1 at 1,

does not, by itself, demonstrate the "necessary access and knowledge" to properly link J.S. to the

crime.  Johnson, 136 A.3d at 80 n.15; see also Moore Opp. at 3; Taylor Opp. at 1; McCraney v.

United States, 983 A.2d 1041, 1050 (D.C. 2009) (holding that defendant's evidentiary proffer

was too speculative, in part because he failed to provide any witness who could support his

allegation that third party had murder weapon the night before crime).  Defendants must offer

some more information regarding the identity of the "henchmen" and their opportunity to

commit the murder.  At this point, what they have submitted lands them far short of the goal line.

As for V.B., the proffered evidence is also too tenuous.  Whether another's possession of

a weapon used in the commission of a crime is sufficiently probative to support a third-party

defense depends on the strength of the connection to the crime.  For example, possession that

takes place in temporal or physical proximity to the crime or is buttressed by other evidence

connecting the third party to the crime is more likely to satisfy the required nexus.  See Andrews

v. United States, 179 A.3d 279, 296 (D.C. 2018) (finding that evidence of third party's access to

murder weapon six weeks before crime occurred did not establish "reasonable possibility" of his

involvement); Lighty, 616 F.3d at 358–59 (finding reasonable the exclusion of testimony

concerning third party's firearm that "looked similar to the murder weapon" absent any

indication why witnesses thought they looked similar and when third party's "alleged possession

did not occur in close temporal proximity to [the victim's] kidnapping and murder"); Battle v.

United States, 754 A.2d 312, 316 (D.C. 2018) (concluding that trial court should have admitted

evidence that person resembling defendant shot a man with same weapon in same neighborhood

two weeks earlier as it "tend[ed] to indicate some reasonable possibility" that third party committed crime with which defendant was charged) (citations omitted).

In this case, the fact that V.B. possessed the murder weapon nine months later may be "suggestive," but it "sheds little light" on the crime itself.  See Jordan, 485 F.3d at 1221 (concluding that evidence that third party possessed "a similar shank months before the stabbing . . . is suggestive, but, ultimately thin" as it "sheds little light on what happened [at the scene of the crime]").  Without more, such as evidence placing V.B. in the vicinity of the crime or otherwise indicating opportunity, his possession of the murder weapon, distinct in time and place from the crime itself, fails to establish the required nexus.

Even though the evidence concerning J.S. and V.B. "has some minimal relevance when considered as a whole," a court must nevertheless balance this limited value against the adverse effects of admitting the evidence, including the danger of "inviting unwarranted speculation or confusion."  Jordan, 485 F.3d at 1221; see also Lighty, 616 F.3d at 358–59 (approving of exclusion of third-party-perpetrator evidence that "would have caused the jury to rankly speculate"); McCraney, 983 A.2d at 1050 (observing that evidence that is "unduly speculative" is "likely only to distract and mislead the jury").  Evidence that is "highly generalized and speculative [in] nature" is typically inadmissible when weighed against its potential adverse effects.  See McVeigh, 153 F.3d at 1191 ("That others shared [the defendant's] political views is a slender reed upon which to vault the dangers of unfair prejudice and jury confusion."); United States v. Flaherty, 76 F.3d 967, 973 (8th Cir. 1996) (affirming exclusion of third-party-perpetrator evidence where defendant pointed to prior similar conduct by third party but had no other evidence linking third party to crime charged).

11

Since the probative value of Defendants' proffered evidence is slight, it presents a real danger of distracting the jury. Although other courts have advised "in favor of inclusion, not exclusion" when the issue is a close one, Winfield, 676 A.2d at 6, this case is not one of those. Until Defendants proffer additional evidence establishing opportunity or otherwise connecting J.S. or V.B. with the crime alleged, it is the Court's responsibility to exclude such evidence lest it distract the jury from "deciding the defendant's guilt or innocence" and lead them instead to "focus on someone else's." Boykin, 738 A.2d at 773 (quoting Gethers v. United States, 684 A.2d 1266, 1271 (D.C. 1996)).

## IV.   Conclusion

The Court, therefore, will grant the Government's Motion to exclude Defendants' reference to any third-party perpetrators. The fact of the murder weapon's recovery from V.B., however, remains admissible. Defendants retain the right to again raise this issue at any point in the future should additional evidence come to light, whether it concerns J.S., V.B., or any other potential third party. A separate Order accompanies this Memorandum Opinion

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  March 10, 2022